UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CHERYL LAGO,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br><br>　　　　　　　　　　Defendant. | Case No. 3:15-cv-00603-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

　　　　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

　　　　Before the court is Plaintiff's Motion for Reversal and/or Remand. (Electronic Case Filing (ECF) No. 15.) Defendant Commissioner filed a Cross-Motion to Affirm (ECF No. 18) and Opposition to Plaintiff's motion (ECF No. 19).[1]

　　　　After a thorough review, the court recommends that Plaintiff's motion be denied, and that the Commissioner's cross-motion to affirm the Administrative Law Judge's (ALJ) decision be granted.

## I. BACKGROUND

　　　　In July 2012, Plaintiff filed applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Administrative Record (AR) 179-205.) The applications were denied initially and on reconsideration. (AR 106-113.) Plaintiff requested a hearing before an ALJ. (AR 114.)

---

[1] These documents are identical.

1    ALJ Eileen Burlison conducted a hearing on June 10, 2014. (AR 26-50.) Plaintiff appeared, representing herself, and testified on her own behalf. (AR 28-42.) Testimony was also taken from a vocational expert (VE). (AR 42-49.)

On August 1, 2014, the ALJ issued a decision finding Plaintiff not disabled through the date of the decision. (AR 8-20.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-3.) Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). She is proceeding pro se in this action.

Plaintiff's motion simply lists out the medical conditions she contends render her disabled, and states that the medical and other evidence were accurately summarized by the ALJ in the record. (ECF No. 15.) The Commissioner argues that the ALJ's decision finding Plaintiff not disabled is supported by substantial evidence in the record. (ECF Nos. 18, 19.)

## II. STANDARD OF REVIEW

**A. Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or

reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and

1 § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits
2 the claimant's physical or mental ability to do basic work activities. *Id*.

3       In the third step, the Commissioner looks at a number of specific impairments listed in
4 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the
5 impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R.
6 § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed
7 Impairments are severe enough to preclude any gainful activity, regardless of age, education, or
8 work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of
9 the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed
10 disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is
11 severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to
12 step four. *Yuckert*, 482 U.S. at 141.

13       At step four, the Commissioner determines whether the claimant can still perform "past
14 relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past
15 relevant work is that which a claimant performed in the last fifteen years, which lasted long
16 enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R.
17 § 404.1565(a) and § 416.920(b)(1).

18       In making this determination, the Commissioner assesses the claimant's residual
19 functional capacity (RFC) and the physical and mental demands of the work previously
20 performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231
21 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R.
22 § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence,
23 including the claimant's and others' descriptions of limitation, and medical reports, to determine
24 what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and
25 § 416.945(a)(3).

26       A claimant can return to previous work if he or she can perform the "actual functional
27 demands and job duties of a particular past relevant job" or "[t]he functional demands and job
28 duties of the [past] occupation as generally required by employers throughout the national

economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

1      If at step five the Commissioner establishes that the claimant can do other work which
2 exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely,
3 if the Commissioner determines the claimant unable to adjust to any other work, the claimant
4 will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071;
5 *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

6                                    **III. DISCUSSION**

7 **A. ALJ's Findings in this Case**

8      The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity
9 since his alleged onset date of February 20, 2008. (AR 13.)

10     At step two, the ALJ found Plaintiff had the following severe impairments: chronic left
11 shoulder tendonitis, chronic right wrist and forearm strain, a history of a right thumb injury, and
12 a mild fine tremor. (AR 13.)

13     At step three, the ALJ concluded Plaintiff did not have an impairment or combination of
14 impairments that meets or medically equals the severity of one of the Listed Impairments. (AR
15 13.)

16     At step four, the ALJ found Plaintiff had the RFC to perform light/sedentary work as
17 defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), and could: lift/carry ten pounds
18 occasionally; could stand/walk for six hours in an eight-hour day; could sit up to six hours in an
19 eight-hour day; should not engage in repetitive climbing, but could otherwise perform occasional
20 postural activities; could perform occasional to frequent, but not constant reaching, handling,
21 fingering, and overhead lifting; must avoid extremes of cold, working at heights, and operating
22 dangerous/moving machinery. (AR 14.) The ALJ then concluded Plaintiff was unable to perform
23 any of her past relevant work. (AR 18.)

24     At step five, considering Plaintiff's age, education, work experience and RFC, the ALJ
25 found there were jobs that existed in significant numbers in the national economy that Plaintiff
26 could perform. (AR 18-19.) As a result, the ALJ found Plaintiff not disabled from the alleged
27 onset date of February 20, 2008 through the date of the decision. (AR 19.)

28

**B. The ALJ's Decision is Supported by Substantial Evidence in the Record**

Plaintiff lists out the following conditions in her motion that she claims make her disabled: partial injury to right lateral cutaneous nerve of forearm; right forearm strain to radialis muscle; tendonitis in the right forearm; bicipital tendonitis of the right shoulder; thoracic outlet syndrome in the right shoulder; rotator cuff tendonitis and tendonitis of the short head of the biceps tendon in the left shoulder; thoracic outlet syndrome of the left shoulder; positive Roos test bilaterally; point tenderness interior and medial to corticoid process bilaterally; unilateral hypothenar atrophy; positional neuropathic pain and numbness; mild clubbing of fingers; radial pulse bilaterally; patellar reflex on the right side; absent triceps reflex on the left side; mild hypothenar atrophy on the left hand; hysethesias sensory loss in the lateral distal forearm region; anomalous finding consistent with Martin Gruber anastomosis crepitus in bilateral shoulders; loss of range of motion and peripheral neuropathy and bilateral pain and numbness in the arms and shoulders; and bilateral tremors. (AR 15 at 1-2.)

She testified at the hearing she did not have a treating doctor at that time. (AR 24.) She does some cooking, cleaning and shopping. (AR 34.) She could take care of her personal needs. (AR 34.) She was able to drive, and took care of her house plants as well as her dog and fish. (AR 35.) She indicated that typing had become an issue because her hands would shake, but she could email and things of that nature, albeit slowly. (AR 34.) She was able to walk and stand okay. (AR 38.) Sitting was a little painful on her shoulders. (AR 38.) She testified she could lift a few pounds, but that it hurt to lift a gallon of milk. (AR 39.) She noted trouble lifting, gripping and grasping things. (AR 40.) She also claimed that she suffered from random headaches, jaw pain, as well as numbness in her hands. (AR 41.) She stated that the shaking and pain in her arms, shoulders and wrists was keeping her from working. (AR 39-40.)

The ALJ discussed that Plaintiff alleged disability based on injuries to her right thumb, shoulders, forearms, shoulders, as well as headaches. (AR 14.) Plaintiff claimed that these impairments caused her pain and tremors in her arms, numbness, sleep disturbances, tiredness and crankiness, neck and shoulder pain, difficulty grasping/gripping with the left hand,

1 headaches, right thumb popping and stiffness, and jaw pain. (AR 14.) Plaintiff also claimed some
2 of her medications upset her stomach. (AR 14.)
3       The ALJ found that while Plaintiff's impairments could reasonably be expected to cause
4 the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting
5 effects of the symptoms were not entirely credible. (AR 14.) The ALJ listed out the factors she
6 must consider in assessing pain or other symptoms, including: daily activities; location, duration,
7 frequency and intensity of the pain or symptoms; precipitating and aggravating factors; type,
8 dosage, effectiveness and side effects of any medication taken; treatment; any measures used to
9 relieve the pain or symptoms; and other factors concerning the functional limitations and
10 restrictions due to pain or other symptoms. (AR 15.)
11       The ALJ commented that a RFC for the reduced range of work assigned took into
12 account the location, duration, frequency and intensity of Plaintiff's alleged symptoms as well as
13 precipitating and aggravating factors. (AR 15.)
14       The ALJ pointed out Plaintiff's testimony that she cooks and cleans, takes care of plants,
15 dog and fish, can minimally use a computer, has no problems standing, and can walk okay,
16 which the ALJ found suggested Plaintiff was more capable than alleged. (AR 15.)
17       Next, the ALJ noted that before the alleged disability period, Plaintiff pursued various
18 treatment modalities with little reported relief, but the records show she was able to return to
19 work at the light level when her alleged disabling impairments were present at approximately the
20 same level of severity as alleged. (AR 15.) Additionally, the ALJ indicated that during the period
21 at issue, Plaintiff's records showed no significant changes or worsening. (AR 15.) From this, the
22 ALJ concluded that because Plaintiff's impairments did not prevent her from working prior to
23 the period at issue, she would not currently be precluded from working. (AR 15.)
24       In addition, the ALJ indicated that the objective medical evidence did not provide strong
25 support for Plaintiff's allegations of disabling symptoms and limitations. (AR 15.) The court will
26 now summarize the ALJ's findings. The court has reviewed the corresponding records in the AR
27 and has provided the AR citation where applicable.
28

The ALJ first noted that Plaintiff's records showed a history of right forearm strain, bilateral forearm tendonitis, cutaneous nerve injury, left shoulder rotator cuff tendonitis, possible bilateral carpal tunnel syndrome, and possible brachial plexopathy of the left upper extremity. (AR 15, *see* records at AR 371, 372, 373, 374, 375 376, 377-379, 380-381, 382, 383-84, 386, 387-390, 396, 410, 417, 418, 420, 422-23, 424, 425, 428, 431, 437.) The ALJ remarked that Plaintiff's treatment included splinting the right forearm, physical therapy, injections, medication, and work restrictions. (AR 15-16, *see* records at AR 371, 372, 373, 374, 375, 376, 379, 380-81, 382, 383-84, 386, 387, 390, 392, 396, 401, 402, 406, 420, 423, 424, 425, 428, 432, 441-443, 444, 445, 447, 450-470.) The ALJ then discussed specific findings in the records: A February 2000 electromyography (EMG) study of the bilateral antebrachial cutaneous nerves was normal, but a May 2000 EMG study of the anterior interosseous nerve revealed an anomalous finding consistent with Martin-Gruber anastomosis, but was otherwise normal. (AR 16, *see* records at AR 402-04.) Electrodiagnostic studies in June 2000 were unremarkable. (AR 16, *see* record at AR 410.) A July 2001 MRI study of the left shoulder revealed lateral down sloping of the distal acromion with narrowing of the subacromial outlet and mild subacromial bursitis, but no evidence of rotator cuff tearing. (AR 16, *see* record at AR 486.) August 2001 electrodiagnostic studies ruled out left carpal tunnel syndrome, left cervical radiculopathy and left brachial plexopathy. (AR 16, *see* records at AR 398-400.)[2] X-rays of the shoulder revealed no signs of arthritis. (AR 16, *see* record at AR 396.) Physical examinations revealed mild abnormalities, but mostly showed normal range of motion with the left shoulder and no sensory or motor deficits with the upper extremities. (AR 16.)

The ALJ then stated that Plaintiff underwent various evaluations for worker's compensation purposes to determine whether she had any permanent partial disability and to determine what work she could perform. (AR 16, *see* records at AR 350-358, 359-367, 492-500.) She received a 2% whole person impairment rating due to left shoulder tendonitis; a 2% whole person impairment due to right wrist and forearm strain; a 1% whole person impairment rating

---

[2] The ALJ states that these studies took place in August 2001, but it appears this was a typo as the records with these findings are dated August 12, 2002. (AR 398-400.)

due to left shoulder tendonitis. (AR 16, *see* records at AR 357-58, AR 366-67, 499-500.) Records from November 2000 stated she could perform light work with frequent manipulation of lower weights, but occasional reaching above shoulder height with the left arm and occasional crawling. (AR 16, *see* records at AR 342-349.) A treating provider also opined she could return to full-time light work without other restrictions. (AR 16, *see* records at 405, 412, 421[3].) Plaintiff reported she could work with the restrictions recommended by her doctors in 2000 and 2001, including avoiding repetitive overhead activities with the left upper extremity and lifting less than twenty-five pounds. (AR 16.)

Plaintiff alleged disability onset of February 20, 2008, but submitted no evidence of treatment to establish a severe impairment or ongoing medical condition between 2002 and 2010, and it appears from the record she did not receive any treatment during this time period. (AR 16.) Her treatment in 2010 related to acute throat pain. (AR 16, *see* record at AR 310.) The ALJ pointed out that her allegations of pain in August 2011 were unchanged from those made in 2000 and 2001. (AR 16, *see* record at AR 308.) She reported pain in the shoulders and numbness in the fingers and hands. (AR 16, *see* record at AR 308.) She exhibited anterior shoulder tenderness to palpation, but good range of motion with both shoulders and hands as well as intact sensation bilaterally. (AR 16, *see* record at AR 308.) She was prescribed Naproxen and reported relief. (AR 16, *see* records at AR 306, 308-09, 341.) She returned for care with the same signs and symptoms in June 2012, and her treating doctor recommended she avoid heavy lifting, see a specialist and pursue physical therapy. (AR 16, *see* records at AR 306-07.) She did not seek additional care because of financial hardship. (AR 16.)

The ALJ then noted that in April 2013, Plaintiff underwent a consultative neurological examination with Malcom Bacchus, M.D. (AR 16, *see* records at AR 322-23.) She reported bilateral anterior shoulder pain, intermittent paresthesia of both hands, chronic paracervical pain, and numbness over the volar aspect of the right forearm. (AR 17, *see* record at AR 322.)

---

[3] Plaintiff's treating provider, Dr. Forrest Burke, stated at this time that he did not expect any "functional deficits" from Plaintiff's condition, and therefore indicated he had no "objective grounds for further restrictions or any permanent restrictions." (AR 421.) He opined that Plaintiff likely suffered injury to a lateral cutaneous nerve of the forearm, "which would expect to resolve without further treatment." (AR 421.) He stated that in light of the nature of the injury, surgical treatment was not indicated. (AR 421.)

1  Dr. Bacchus noted signs of fine tremors with the arms outstretched, but none in postures of
2  repose. (AR 17, *see* record at 322.) He noted subjective numbness in the second and third digit of
3  the bilateral volar pads as well as decreased sensation over the medial volar forearm. (AR 17, *see*
4  record at 322.) She had no scapular winging, no evidence of atrophy, fasciculation, or trophic
5  changes in the upper extremities. (AR 17, *see* record at 322.) She had tenderness over the left
6  cervical region, but cranial nerves were intact, the neck was supple and the upper extremity
7  strength was full. (AR 17, *see* record at 323.) Dr. Bacchus opined Plaintiff could occasionally
8  lift/carry ten pounds; sit six hours or more; stand/walk six hours in an eight-hour day; could
9  perform occasional postural activities, but no climbing of ladders or scaffolds; he limited
10 reaching, fingering, and handling due to subjective pain and numbness complaints. (AR 17, *see*
11 record at 324-25.)

12     The ALJ pointed out that Plaintiff took a vocational testing examination for a
13 communications specialist trainee and scored 90.05 out of 100, and it was determined she could
14 type 25 words per minute with 96% accuracy. (AR 17, *see* records at 281-84, 295-297.)

15     The ALJ then discussed that the state agency medical consultant who reviewed Plaintiff's
16 initial application opined Plaintiff could perform light work with six hours of standing/walking
17 and six hours of sitting in an eight-hour day; recommended Plaintiff only occasionally climb
18 ladders/ropes/scaffolds; restricted her to occasional left sided above the shoulder reaching. (AR
19 17, *see* records at 51-59.) At the reconsideration level, the consultant reviewing Plaintiff's claim
20 affirmed most of these recommendations for a range of light work, but opined Plaintiff could
21 frequently perform most postural activities, but occasionally crawl and never climb
22 ladders/ropes/scaffolds; she should be limited to bilateral overhead reaching on an occasional
23 basis; and should avoid concentrated exposure to extreme cold and hazards. (AR 17, *see* records
24 at 60-68.)

25     Based on the foregoing, along with Plaintiff's testimony, the ALJ concluded Plaintiff
26 could perform the range of light/sedentary work described in her RFC. (AR 17.) The ALJ
27 accorded great weight to the only limitation given by her treating physician in 2000-2002, which
28 was a recommendation to avoid heavy lifting. (AR 17.) The ALJ accorded great weight to the

opinions of Dr. Bacchus and the state agency consultants, finding they were supported by Plaintiff's medical history, her testimony and her actual activity level. (AR 17.) Since Plaintiff's performance on the vocational test revealed she was capable of typing with relatively good accuracy, the ALJ found she could perform frequent to occasional handling and fingering. (AR 17.)

The court finds that the ALJ's findings are supported by substantial evidence in the record. The medical evidence in the record is consistent with the ALJ's description, and the ALJ accorded great weight to the opinions of the doctor performing the neurological consultation as well as the state agency consultants who reviewed her file at the initial and reconsideration levels, as well as the lifting limitation recommended by her treating physician.

The ALJ properly discounted Plaintiff's credibility, and set forth legally sufficient clear and convincing, specific reasons for doing so. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citation omitted). The ALJ correctly pointed out the factors she must consider in assessing credibility of the allegedly disabling subjective symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii). The ALJ considered Plaintiff's daily activities; discussed that the RFC took into account the location, duration, frequency, intensity, and precipitating and aggravating factors; the medication she took; and discussed her limited treatment. The ALJ then gave a thorough discussion of how the objective medical evidence did not strongly support the alleged limitations.

On July 17, 2015, Plaintiff submitted medical records to the Appeals Council that post-dated the hearing and the ALJ's decision (from medical appointments on September 20, 2014, September 25, 2014, and October 18, 2014). (AR 502-508.) These records were made a part of the AR. Under the regulations, a claimant may submit new and material evidence to the Appeals Council, and the Appeals Council shall consider the evidence "only where it relates to the period *on or before the date of the administrative law judge hearing decision*." 20 C.F.R. § 404.970(b) (emphasis added); *see also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). Here the evidence relates to the period of time *after* the ALJ's decision; therefore, the Appeals Council was not required to consider it.

1    Even if the evidence submitted to the Appeals Council that post-dates the ALJ's decision
2    could were considered to relate to the period on or before the ALJ's decision, the court concludes
3    that the ALJ's decision, which became the final decision of the Commissioner, is still supported
4    by substantial evidence.

5    These records reflect that on September 20, 2014, Plaintiff complained of bilateral
6    shoulder pain. (AR 505-06.) She mentioned she had had worsening bilateral shoulder pain and
7    numbness for the past ten years that radiated into her arms and hands. (AR 505.) She reported
8    difficulty raising her arms overhead, and she had difficulty sleeping. (AR 505.) On examination
9    she exhibited no deformities, edema or erythema in her extremities, but had mild clubbing of the
10   finger and crepitus in the shoulder joint. (AR 506.)  She was assessed with thoracic outlet
11   syndrome[4], bilateral pain and numbness in the arms and shoulders and crepitus in the shoulder,
12   as well as a tremor in her hands. (AR 506.) Her range of motion was not limited on examination.
13   (AR 506.) The medical provider also noted concern about Multiple Sclerosis as there was a
14   family history of this disease, and she was advised of the signs and symptoms and was instructed
15   to return if any of the symptoms were exacerbated. (AR 506.) An x-ray of the shoulder was
16   ordered, and no acute changes were noted. (AR 506.) There is a notation that surgery was
17   previously recommended (for the thoracic outlet syndrome) , but Plaintiff declined as she was
18   reluctant to undergo surgical removal of the first rib. (AR 506.) She indicated physical therapy
19   had not helped in the past. (AR 506.) It was recommended that she follow up with a surgeon for
20   further management. (AR 506.) Labs were ordered and she was advised to return to see an
21   orthopedic specialist. (AR 506.)

22   She was then seen on September 25, 2014. (AR 504.) It was noted that the x-ray of the
23   left shoulder was unremarkable, and her lab results were normal. (AR 504.) She was advised to
24   follow up with an orthopedic specialist. (AR 504.)

---

[4] This is "a group of disorders that occur when blood vessels or nerves in the space between your collarbone and your first rib (thoracic outlet) are compressed. This can cause pain in your shoulders and neck and numbness in your fingers." http:www.mayoclinic.org/diseases-conditions/thoracic-outlet-syndrome/home/ovc-20237878, last visited September 16, 2016.

Plaintiff was seen again on October 18, 2014. (AR 502-503.) She indicated that the pain in her bilateral shoulders hindered daily activities. (AR 502.) The radiating of pain was "positionally dependent," occurring when she was either lying or sitting down. (AR 502.) She also reported numbness in her fingers which was positionally dependent, as well as a tremor that worsened after prolonged physical activity. (AR 502.) On examination, she had full range of motion and strength bilaterally in the upper extremities. (AR 502.) She had a positive Roos test on the left arm, and point tenderness inferior and medial to corticoid process bilaterally. (AR 502.) She had a tremor in both hands, and mild hypothenar atrophy in the left hand. (AR 502.) She was again assessed with thoracic outlet syndrome, with unilateral hypothenar atrophy, and positional neuropathic pain numbness. (AR 502.) It was recommended that she engage in exercises to strengthen the shoulder girdle, such as swimming or walking. (AR 502.)

While the evidence includes a diagnosis of thoracic outlet syndrome and tremor, the ultimate recommendation of the doctor was for Plaintiff to engage in exercises, such as swimming and walking, that would strengthen her shoulder girdle. Moreover, her examinations in September and October of 2014 demonstrated Plaintiff had full range of motion and strength bilaterally in the upper extremities, and imaging and lab studies were unremarkable. Finally, the evidence does not demonstrate that Plaintiff was under a disability during the time period being reviewed by the ALJ.

In sum, the court finds no basis for reversing or remanding the decision of the ALJ. Therefore, it is recommended that Plaintiff's motion be denied, and the Commissioner's cross-motion to affirm be granted.

Plaintiff should be reminded that she may submit a new application for benefits if she believes that a deterioration in her medical condition currently prevents her from working. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 n. 1 (9th Cir. 2001).

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion (ECF No. 15) be **DENIED**; that the Commissioner's cross-motion to affirm (ECF No. 18) be **GRANTED**.

///

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED:  September 19, 2016.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE